UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:

BARNETT CORPORATION, et al.

           Debtors.

---------------------------------------------------------x

ALLAN B. MENDELSOHN, Solely In His
Capacity as Chapter 7 Trustee Of The Estates
Of Barnett Corp. and Barnett Forest LLC,

           Plaintiff,

 -against-

DOLE FRESH FRUIT COMPANY,

           Defendant.

---------------------------------------------------------x

Bankruptcy Case No. 8-22-73623-ast

Adversary Proceeding No. 8-24-08121-ast

**NOTICE OF MOTION**

HEARING REQUESTED

## NOTICE OF DOLE FRESH FRUIT COMPANY'S
## MOTION TO DISMISS COMPLAINT

      **PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law in Support

of Defendant Dole Fresh Fruit Company's Motion to Dismiss the Complaint, dated May 12, 2025,

and the accompanying declaration of Rachel Katzin, dated May 12, 2025, together with the

exhibits thereto, Defendant Dole Fresh Fruit Company, by and through its undersigned counsel,

move this Court before the Honorable Alan S. Trust, Chief United States Bankruptcy Judge, on a

date and time to be determined by the Court,[1] in Courtroom 960 at the Alfonse M. D'Amato

Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, for an Order, pursuant to

Federal Rule of Civil Procedure 12(b)(6), made applicable by Rule 7012 of the Federal Rules of

---

[1] In a joint stipulation and proposed order filed at ECF No. 10, the parties submitted a proposed briefing schedule
culminating on June 26, 2025.

Bankruptcy Procedure, granting Defendant Dole Fresh Fruit Company's Motion to Dismiss, dismissing the Complaint, ECF No. 1, and for such other and further relief as this Court may deem just and proper.

Dated: May 12, 2025
      New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Rachel I. Katzin*
     Rachel I. Katzin

     GIBSON, DUNN & CRUTCHER LLP
     Thomas A. Manakides (*pro hac vice pending*)
     Irvine, CA 92612-4412
     Telephone: (949) 451-4060
     tmanakides@gibsondunn.com

     Rachel I. Katzin
     200 Park Avenue
     New York, NY 10166-0193
     Telephone: (332) 253-7660
     rkatzin@gibsondunn.com

     *Attorneys for Defendant*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:

BARNETT CORPORATION, et al.

        Debtors.

---------------------------------------------------------x

ALLAN B. MENDELSOHN, Solely In His
Capacity as Chapter 7 Trustee Of The Estates
Of Barnett Corp. and Barnett Forest LLC,

        Plaintiff,

 -against-

DOLE FRESH FRUIT COMPANY,

        Defendant.

---------------------------------------------------------x

Bankruptcy Case No. 8-22-73623-ast

Adversary Proceeding No. 8-24-08121-ast

## MEMORANDUM OF LAW IN SUPPORT OF DOLE FRESH FRUIT COMPANY'S MOTION TO DISMISS COMPLAINT

**Table of Contents**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................................... 4

    A.   The Parties and the Challenged Transfers ......................................................... 4

    B.   The Fraud Complaint ............................................................................................ 6

    C.   The Complaint Against Dole ................................................................................. 8

III.  LEGAL STANDARD .................................................................................................. 9

    A.   The Trustee's Pleading Requirements ................................................................. 9

    B.   Judicial Notice ...................................................................................................... 11

IV.   ARGUMENT ............................................................................................................. 12

    A.   Counts Two–Five and Eight Alleging Constructive Fraudulent Transfer Should Be Dismissed ................................................................................................................. 16

        1.   The Trustee Did Not Adequately Allege That Barnett Did Not Receive Reasonably Equivalent Value or Fair Consideration for the Challenged Transfers.................................. 17

        2.   There Are No Allegations That Dole Lacked Good Faith in Receiving the Challenged Transfers ...................................................................................................... 21

    B.   Counts One, Six, and Seven for Actual Fraudulent Transfer Should Be Dismissed ........ 22

        1.   The Trustee Failed to Allege Barnett's Actual Fraudulent Intent................................ 22

        2.   Dole Received the Transfers in Good Faith.................................................................. 24

    C.   Counts Nine and Ten Alleging Unjust Enrichment and Money Had and Received Should Be Dismissed ............................................................................................................. 26

    D.   Count Eleven Seeking Disallowance of Claims under 11 U.S.C. §§ 502(d) and (j) Should Be Dismissed .............................................................................................................. 28

V.    CONCLUSION........................................................................................................... 29

**Table of Authorities**

**Page(s)**

## Cases

*In re 45 John Lofts, LLC*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................16, 29

*5-Star Mgmt., Inc. v. Rogers*,
  940 F. Supp. 512 (E.D.N.Y. 1996) .............................................................................12

*In re A.N. Freida Diamonds, Inc.*,
  616 B.R. 295 (Bankr. S.D.N.Y. 2020) ......................................................................28

*Abdul-Rahman v. City of New York*,
  2012 WL 1077762 (E.D.N.Y. Mar. 30, 2012) ..........................................................12

*In re Actrade Fin. Techs. Ltd.*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................................................23

*In re Adler*,
  372 B.R. 572 (Bankr. E.D.N.Y. 2007) ......................................................................23

*In re Akanmu*,
  502 B.R. 124 (Bankr. E.D.N.Y. 2013) ......................................................................19

*Amable v. New Sch.*,
  551 F. Supp. 3d 299 (S.D.N.Y. 2021) ......................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................9, 10, 17

*In re Barnett Corp.*,
  No. 8-22-73623-ast, ECF No. 249 (Dec. 20, 2024) ...................................................2

*Bauser v. Porsche Cars North Am., Inc.*,
  2024 WL 2406884 (N.D. Ga. 2024) ..........................................................................26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................1, 2, 9, 10, 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
  12 F.4th 171 (2d Cir. 2021) .......................................................................................25

*Boston Tr. Gr., Inc. v. Burnazos*,
  835 F.2d 1504 (1st Cir. 1987)....................................................................................25

*Chen v. New Trend Apparel, Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014)...........................................................................18

*In re Churchill Mortg. Inv. Corp.*,
  256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd sub nom.*, *Balaber-Strauss v.
  Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001) .......................................10, 13, 15, 16, 18

*Citibank, N.A. v. Aralpa Hldgs. Ltd. P'ship*,
    714 F. Supp. 3d 416 (S.D.N.Y. 2024) ..................................................................21

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 790 (2012) ..........................................................................................27

*DoubleLine Corp. LP v. Odebrecht Fin. Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018) ..................................................................17

*Durand v. Ackerman*,
    2010 WL 3834587 (E.D.N.Y. Sept. 27, 2010) .....................................................16

*Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*,
    724 F. Supp. 2d 308 (E.D.N.Y. 2010) .................................................................21

*Fountoukis v. Geringer*,
    33 A.D.3d 756 (2d Dep't 2006) ...........................................................................27

*Gargano v. Morey*,
    165 A.D.3d 889 (2d Dep't 2018) ....................................................................26, 27

*In re Garvia*,
    494 B.R. 799 (Bankr. E.D.N.Y. 2013) .................................................................13

*Goel v. Ramachandran*,
    111 A.D.3d 783 (2d Dep't 2013) .........................................................................28

*In re Gonzalez*,
    342 B.R. 165 (Bankr. S.D.N.Y. 2006) .................................................................19

*Harris v. New York State Dep't of Health*,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002) ..................................................................11

*HBE Leasing Corp. v. Frank*,
    48 F.3d 623 (2d Cir. 1995) .............................................................18, 19, 20, 25

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020) ..................................................................11

*In re Hydrogen, LLC*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) .............................10, 12, 17, 22, 27

*Kalaj v. Kay*,
    2023 WL 4564795 (E.D.N.Y. July 17, 2023), appeal dismissed (Oct. 18,
    2023) ......................................................................................................................26

*In re Kovacs*,
    2021 WL 1603128 (Bankr. E.D.N.Y. Apr. 21, 2021) ...........................................10

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ................................................................................11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ..................................................................................3

iii

*Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*,
   1996 WL 732634 (S.D.N.Y. 1996) ................................................................14

*In re M. Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ..............................................4, 14, 24, 25

*In re M. Fabrikant & Sons, Inc.*,
   447 B.R. 170 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012),
   *aff'd*, 541 Fed. App'x 55 (2d Cir. 2013) ..........................................................25

*MacNaughton v. Young Living Essential Oils, LC*,
   67 F.4th 89 (2d Cir. 2023) ...............................................................................26

*In re Maxwell Comm'n Corp. PLC*,
   186 B.R. 807 (S.D.N.Y. 1995) .........................................................................28

*McNellis v. Raymond*,
   420 F.2d 51 (2d Cir. 1970) ...............................................................................21

*In re Michel*,
   572 B.R. 463 (Bankr. E.D.N.Y. 2017) .............................................................18

*In re Molina*,
   657 B.R. 172 (Bankr. E.D.N.Y. 2023) ..........................................2, 10, 17, 23

*Munno v. Town of Orangetown*,
   391 F. Supp. 2d 263 (S.D.N.Y. 2005) ..............................................................12

*In re Nanobeak Biotech Inc.*,
   656 B.R. 350 (Bankr. S.D.N.Y. 2024) ..................4, 10, 12, 13, 15, 16, 22, 23, 24

*In re Old CarCo LLC*,
   2011 WL 5865193 (S.D.N.Y. Nov. 22, 2011), *aff'd sub nom.*, 509 Fed. App'x
   77 (2d Cir. 2013) .............................................................................................20

*Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp.*,
   14 A.D.3d 678 (2d Dep't 2005) ........................................................................27

*Panix Promotions, Ltd. v. Lewis*,
   2002 WL 122302 (S.D.N.Y. Jan. 22, 2002) .....................................................28

*Paper Acquis., Inc. v. Astoria Fed. Sav. & Loan Ass'n*,
   2014 WL 2890339 (Sup. Ct. N.Y. Cnty. June 26, 2014) ...................................27

*In re Parmalat Sec. Litig.*,
   381 F. Supp. 2d 283 (S.D.N.Y. 2005) ................................................................5

*Rapaport v. Asia Elecs. Hldg. Co.*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...........................................................11, 14

*Rubin v. Manufacturers Hanover Tr. Co.*,
   661 F.2d 979 (2d Cir. 1981) .........................................................................19, 20

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005)..........................................................16, 20, 22, 23, 25

*Sullivan v. Kodsi*,
  373 F. Supp. 2d 302 (S.D.N.Y. 2005).........................................................14

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007)........................................................................11

*Towers Charter & Marine Corp. v. Cadillac Ins. Co.*,
  894 F.2d 516 (2d Cir. 1990).................................................................19

*Tronox Inc. v. Anadarko Petroleum Corp.*,
  429 B.R. 73 (Bankr. S.D.N.Y. 2010)......................................................4, 11

*In re Try The World, Inc.*,
  2021 WL 3502607 (Bankr. S.D.N.Y. Aug. 9, 2021) ..........................................28

*United States v. Bestfoods*,
  524 U.S. 51 (1998)...........................................................................5

*United States v. Silver*,
  864 F.3d 102 (2d Cir. 2017).................................................................19

*In re USA United Fleet, Inc.*,
  559 B.R. 41 (Bankr. E.D.N.Y. 2016).........................................................16

**Statutes**

11 U.S.C. § 502(d) .............................................................................28

11 U.S.C. § 548 .................................................................................9

11 U.S.C. § 548(a)(1)(A) .......................................................................23

11 U.S.C. § 548(a)(1)(B) ....................................................................16, 17

11 U.S.C. § 548(c) .............................................................................24

11 U.S.C. § 548(c) .............................................................................25

DCL §§ 272–275 ...............................................................................16

DCL § 273 .....................................................................................17

DCL §§ 273–275 ...............................................................................17

DCL § 273(a) ..................................................................................23

DCL § 274 ..................................................................................16, 17

DCL § 276 .....................................................................................23

DCL § 277(a) ..................................................................................24

DCL § 278(1)................................................................................................................24

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 548.03................................................................................21

Superintendencia de Control del Poder de Mercado, *Sexpediente No. SCPM-CRPI-010-2021* (June 11, 2021), available at
https://centrocompetencia.com/wp-content/uploads/2024/05/SCPM-CRPI-010-2021.pdf................................................................................................................7

Surpapelcorp S.A., *Public Offering Prospectus III Issuance of Long-Term Obligations*, available at
https://www.bolsadevaloresguayaquil.com/sigcv/Opciones%20de%20Inversio
n/Renta%20Fija/Prospectos/SURPAPELCORP%20S.A/Obligaciones/Prospec
to%20III.pdf...............................................................................................................7

**Rules**

Bankr. R. 7009.............................................................................................................10

Fed. R. Civ. P. 9(b)................................................................................................3, 10

Fed. R. Evid. 201 .........................................................................................................11

Dole Fresh Fruit Company ("Dole" or "Defendant"), by and through its undersigned counsel, hereby files this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for an order dismissing with prejudice the Complaint, ECF No. 1, filed in this adversary proceeding (the "Action") by Allan B. Mendelsohn in his capacity as Chapter 7 trustee (the "Trustee" or "Plaintiff") of Barnett Corporation and Barnett Forest LLC (together, the "Debtor" or "Barnett").[2]

## I.    PRELIMINARY STATEMENT

Dole sold a good, for which it expected to receive—and did receive—payment. In particular, Dole sold rolls of recycled paper for use in containerboard and cardboard box manufacture. Barnett, a self-described "broker for paperboard products throughout the world" including "containers primarily for fruit shipment"[3] provided this payment. The Trustee does not allege any wrongdoing by Dole (nor could it) but alleges that the payment transfers to Dole were fraudulent, asserting causes of action for constructive or actual fraudulent transfer, unjust enrichment, and money had and received. However, after two years of investigation, the Trustee is unable to state *any factual matter* in support of its conclusory allegations to avoid the transfers. Instead, the Trustee makes only "a formulaic recitation of [the] cause[s] of action[s'] elements," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), and alleges a sweeping backdrop of alleged fraud by Barnett itself—without proffering a factual nexus between Barnett's misconduct and the specific transfers to Dole, totaling approximately $22 million, that the Trustee seeks to avoid (the "Challenged Transfers"). Tellingly, the Complaint mirrors the allegations of dozens of other

---

[2] *See infra* n.12.
[3] ECF No. 1 ("Compl.") ¶ 11.

cookie-cutter complaints against parties from which the Trustee seeks to recover. On its face, the allegations are conclusory and implausible. They fail to satisfy the pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and the Complaint should be dismissed.

The Trustee's constructive fraudulent transfer claims fail because the Complaint "alleges in a formulaic and conclusory manner that the Debtor received less than a reasonably equivalent value." *In re Molina*, 657 B.R. 172, 187 (Bankr. E.D.N.Y. 2023). As just one example, the Complaint alleges: "Barnett did not receive reasonably equivalent value in exchange for the" transfers.[4] But this is a threadbare legal conclusion. The Complaint does not allege any facts supporting an inference that Barnett did not receive value for the Challenged Transfers. This is fatal to the Trustee's claims.

The Trustee's allegations of "a massive bank fraud" by Barnett's sole shareholder[5] cannot salvage them. In another complaint within the same bankruptcy proceeding (the "Fraud Complaint"), the Trustee alleges that the sole shareholder of Barnett, Jason Rosenthal, along with other entities and individuals, engaged in a global "kiting" scheme, involving fictious payables and inflated account receivables across a "spider-web of entities" that lacked corporate formalities and controls.[6] The Complaint here merely echoes the general claim of fraud, alleging that the Challenged Transfers were "made as part of Rosenthal's scheme involving the . . . Fictitious Receivables and Converted Receivables."[7] But this "naked assertion" is devoid of "further factual enhancement" necessary to survive dismissal. *Twombly*, 550 U.S. at 555, 557. It fails to grapple with the implausibility of the Trustee's allegations as applied to the Challenged Transfers

---

[4] *Id.* ¶ 40; *see id.* ¶¶ 74, 79, 54.

[5] *Id.* ¶ 1.

[6] *In re Barnett Corp.*, No. 8-22-73623-ast, ECF No. 249 (Dec. 20, 2024), ¶¶ 1–6 (the "Fraud Compl."). The Fraud Complaint is "in the public record" and "filed in [this or] other courts" by the Trustee, and this Court may take judicial notice of the Fraud Complaint and properly consider it for purposes of this Motion to Dismiss where the allegations contradict the Trustee's allegations in the Complaint. *See infra* Section III.B.

[7] Compl. ¶ 29.

involving Dole. The Challenged Transfers involved payments sent *from* Barnett to Dole—a distinct entity, separate and apart from Rosenthal's "kiting" scheme—and thus sending money to Dole would not have furthered the alleged fraudulent scheme by inflating or evidencing Barnett's receivables.

If anything, the fraud allegations support dismissal of the Complaint by undercutting the plausibility of the Trustee's claims of no reasonably equivalent value. The Fraud Complaint falls short of alleging that all of Barnett's business was a fraud. Rather, the Trustee alleges that Barnett did "legitimate business" "at all relevant times,"[8] but also alleges that Barnett sent and received "significant" and "large" payments with the same entities as part of the fraud.[9] Again, the Complaint is devoid of any specifics whatsoever on how each of the Challenged Transfers were somehow part of the fraud, not Barnett's "legitimate business." In attempting to muster a claim, the Trustee points to a review of Barnett's "books and records" to allege the absence of "purchase orders or invoices or other documentation to indicate a proper basis for the Transfers."[10] However, the Trustee also alleges that Barnett's books and records were inaccurate and "fictitious"—going so far in the Fraud Complaint to claim they are a "sham."[11] So, which is it? The Trustee cannot have it both ways, making the claims here implausible.

Moreover, for the claims grounded in actual fraud—including unjust enrichment and money had and received—Rule 9(b) requires the Trustee to "*detail* the events giving rise to the fraud" and "allege *facts* 'that give rise to a strong inference of fraudulent intent.'" Fed. R. Civ. P. 9(b); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (emphasis added) (citation omitted). And for good reason: Rule 9(b) serves "to protect the

---

[8] Fraud Compl. ¶ 338.
[9] *Id.* ¶¶ 342, 380, 382–83.
[10] *Id.* ¶ 435.
[11] *Id.* § C.

defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Tronox Inc. v. Anadarko Petroleum Corp.*, 429 B.R. 73, 92 (Bankr. S.D.N.Y. 2010) (citation omitted). The Trustee does not come close to meeting the heightened pleading standard under Rule 9(b). For example, even if Barnett committed "fraud and illegality in *obtaining* the funds" it used to make the Challenged Transfers (an unknown based on the allegations), this still "does not support a finding that *spending* the funds was done" with the necessary intent—much more detailed allegations are required here. *In re Nanobeak Biotech Inc.*, 656 B.R. 350, 367 (Bankr. S.D.N.Y. 2024) (emphasis in original). And the Trustee may not "rel[y] solely on an inapplicable presumption of all-encompassing fraudulent intent, pleading facts that only go to the way [the debtor] was operated, to the detriment of its own lenders and investors." *Id.* at 367 (citation omitted) (alterations partly in original). The Trustee must—but has not—put forth detailed allegations giving rise to the fraud for each of the Challenged Transfers.

At bottom, the Trustee's Complaint amounts to "no more than an effort to bolster an implausible theory with rank speculation." *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 738–39 (Bankr. S.D.N.Y. 2008) (dismissing claims). Following two years of investigation, the Complaint amounts to nothing more than a fishing expedition and should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    The Parties and the Challenged Transfers

Dole, a global leader in the production and transport of fresh produce, transports its produce internationally in cardboard boxes. After delivering produce from Central and South America to the United States, Dole purchases paper from United States paper mills, transports it back to Central and South America on its ships, and then sells it to cardboard manufacturers, which use

the paper to make cardboard boxes for resell to Dole and Dole's third-party growers. The Trustee

describes Barnett as "an importer and distribu[or] of paperboard products, including cardboard

boxes . . . and craft paper utilized by manufacturers of corrugated boxes and containers primarily

for fruit shipment," and "a broker for paperboard products because cardboard box manufacturers

typically do not produce their own cardboard and must acquire cardboard to make the boxes."[12]

On July 15, 2009, Barnett and Dole entered into a Binding Letter of Intent for the Purchase

of Shares of a particular cardboard manufacturer. Among other things, the Letter of Intent set forth

that Barnett "or its designees" would be the 'Buyer' of the manufacturer, and that Dole and the

manufacturer would continue to engage in business by which the manufacturer would purchase

paper from Dole and then would furnish Dole with cardboard boxes made using the paper. The

Letter of Intent incorporated by reference a Supply Contract, which provided detailed information

surrounding pricing, payment schedule, quantity, and the contract term, among other things.

Arising out of these documents, Dole sold rolls of recycled paper to the manufacturer and its paper

mill, and Barnett paid all or part of certain invoices listed in Exhibit A to the Complaint.[13]

The Trustee alleges that each of these payments[14] was actually or constructively fraudulent

because they occurred on or about the same time that Jason Rosenthal—the common owner of

---

[12] Compl. ¶ 11; Fraud Compl. ¶¶ 53–54. The Trustee brings the Complaint on behalf of Barnett Corp. and Barnett Forest LLC. But no allegations are made with respect to the Challenged Transfers that involve Barnett Forest LLC or a collective of the "Barnett Entities." The Trustee does not allege that Barnett Forest LLC made any of the Challenged Transfers or otherwise suffered any damages related to the Trustee's allegations against Dole. *See generally* Compl.
[13] In Exhibit A to the Complaint, Plaintiff places at issue 33 allegedly fraudulent transfers. ECF No. 1-1. For four for of these transfers, Plaintiff alleges that the transferee was Dole Fresh Fruit International, Ltd. ("DFFI"). DFFI is a separate entity from the Dole defendant here, Dole Fresh Fruit Company. For this Court to have jurisdiction over DFFI, Plaintiff must have made DFFI a defendant to this action. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (citation and quotation marks omitted); *In re Parmalat Sec. Litig.*, 381 F. Supp. 2d 283, 288 (S.D.N.Y. 2005) ("Jurisdiction over a parent corporation . . . does not automatically establish jurisdiction over a wholly owned subsidiary.") (citation and quotation marks omitted). It did not. *See* ECF No. 1. As such, all factual and legal statements in this memorandum of law relate only to allegations against the named Dole defendant, Dole Fresh Fruit Company, and not those against DFFI.
[14] Compl. ¶ 1.

Barnett and numerous other entities—allegedly directed a bank fraud scheme.[15]  The Trustee does not allege any facts in support of this allegation as to payments at issue, instead alleging broadly that "[t]he Transfers were made as part of Rosenthal's scheme."[16]

## B.    The Fraud Complaint

One week after the Complaint was filed, the Trustee filed another complaint in the same bankruptcy proceeding.  Across a 170-page complaint against "all actors involved" in an alleged fraudulent scheme, the Trustee brings 138 causes of action against dozens of defendants.[17]  Dole is notably not alleged to have been "involved" in the alleged scheme (nor was it).[18]  The Fraud Complaint alleges that Barnett exists within a "spider-web of entities,"[19] causing creditors and other third parties to believe in the corporate unity of these entities.[20]

The Fraud Complaint details a lack of corporate formalities and controls between Barnett on the one hand and a litany of entities on the other.  Among other things, the Trustee admits in the Fraud Complaint that Barnett did not deal at "arms-length" with entities including a paper distributor, paper mill, and cardboard box manufacturer.[21]  The Trustee alleges in detail, for example, that Barnett and/or its officers or employees had "control" of the "bank accounts" of entities,[22] had "knowledge and control over many entities involved" in Barnett's alleged scheme,[23] "managed" affiliated entities,[24] and "had knowledge and access to [an entity's] receipt and transfer of funds because they directly communicated with [the bank], including obtaining [the entity]'s

---

[15] *Id.* ¶¶ 20–25.  Dole is not alleged to have been a part of this alleged scheme or any related wrongdoing.
[16] *Id.* ¶ 29.
[17] Fraud Compl. ¶ 13.
[18] *Id.* at 2–3.
[19] *Id.* ¶ 4.
[20] *Id.* ¶¶ 1–2, 10.
[21] *Id.* ¶ 131.
[22] *Id.* ¶¶ 204–05; *see id.* ¶¶ 177, 187, 207, 212, 337.
[23] *Id.* ¶ 222.
[24] *Id.* ¶ 335.

bank statements and responding to questions from [the bank] concerning the legitimacy of certain transfers out of [the entity's] bank account."[25] The Trustee further alleges that Barnett did "legitimate business" "at all relevant times,"[26] with entities that also participated in the fraud by sending Barnett "a significant, but as of yet, unknown amount of funds" and "large transfers."[27]

Public reporting substantiates that the interrelationship of certain entities identified in the Fraud Complaint were widely known. For example, the Superintendencia de Control del Poder de Mercado—an economic division of the Ecuadorian government—describes certain defendant entities—which were involved in the manufacture and distribution of paper and cardboard, alongside Barnett—as a "subsidiary of the American company **BARNETT CORPORATION**" and "the Ecuadorean subsidiary of **BARNETT**" in an official public document.[28] This report also points to an Ecuadorian court judgment describing Barnett as "part" of a Fraud Complaint defendant entity, finding the actions of that entity "attributable to" Barnett, and noting that the entity is "one of its [Barnett's] subsidiaries."[29] And a 2021 prospectus reports that Barnett entered "payment agreement[s]" for "outstanding invoices,"[30] agreements for the payment of "cash advances,"[31] and "loan" agreements.[32] Thus, Barnett was incentivized to see these entities

---

[25] *Id.* ¶ 245; *see* ¶ 225.

[26] Fraud Compl. ¶ 338.

[27] Fraud Compl. ¶ 342; *see also* ¶¶ 380, 382–83.

[28] *See* Superintendencia de Control del Poder de Mercado, *Sexpediente No. SCPM-CRPI-010-2021*, at 3, 34 (Jun. 11, 2021) (emphasis in original), available at https://centrocompetencia.com/wp-content/uploads/2024/05/SCPM-CRPI-010-2021.pdf. A certified translation of this public document is attached to the Declaration of Rachel Katzin ("Katzin Decl.") as Ex. A at 4–5. This document is "in the public record," and this Court can take judicial notice of this document and properly consider it on this Motion to Dismiss—not for the truth of its contents but that the interrelationship between Barnett and other entities was widely known. *See infra* Section III.B.

[29] Katzin Decl. Ex. A at 6.

[30] *See* Surpapelcorp S.A., *Public Offering Prospectus III Issuance of Long-Term Obligations*, at 109–10, 173, 240 available at https://www.bolsadevaloresguayaquil.com/sigcv/Opciones%20de%20Inversion/Renta%20Fija/Prospect os/SURPAPELCORP%20S.A/Obligaciones/Prospecto%20III.pdf. A certified translation of this public document is attached to the Katzin Decl. as Ex. B at 25–26, 35–36. This document is "in the public record," and this Court can take judicial notice of this document and properly consider it on this Motion to Dismiss—not for the truth of its contents but that the interrelationship between Barnett and other entities was widely known. *See infra* Section III.B.

[31] Katzin Decl. Ex. B at 35–36.

[32] *Id.* at 19, 26–27, 36.

succeed.

## C.      The Complaint Against Dole

The Trustee brings eleven causes of action against Dole related to 33 payments made by Barnett, which the Trustee alleges to have been "made as part of Rosenthal's scheme. . . ."[33] Within only 31 paragraphs purporting to lay out the basis for the Trustee's claims,[34] two provide legal definitions of the parties,[35] nine describe the background of Barnett's bankruptcy filings,[36] and five set out "Rosenthal's fraud"—an alleged scheme occurring during the same years the Challenged Transfers were made.[37]  *Only twelve* paragraphs purport to make allegations about "The Transfers."[38]

The crux of the Trustee's Complaint is that the Challenged Transfers are avoidable because Barnett was allegedly engaged in a wide-ranging fraud during the years in question, and "Barnett's books and records do not appear to contain purchase orders or invoices or other documentation to indicate a proper basis for the Transfers."[39]  At the same time, Barnett states that Barnett's books and records do not reflect reality, alleging that Barnett's books and records were "fictitious,"[40] and, alleging in the Fraud Complaint, that "the Barnett Entities' books and records are a sham."[41] Barnett further alleges that "[t]he Transfers were not made in good faith" and that "Barnett did not receive reasonably equivalent value in exchange for the" transfers.[42]  No facts are alleged in

---

[33] Compl. ¶ 29.
[34] The Complaint contains a total of 95 paragraphs.  Paragraphs 1–7 purport to establish the nature of the action, jurisdiction, and venue.  Paragraphs 39–95 recite the Trustee's causes of action.  The remaining 31 paragraphs purport to make allegations upon which the Trustee's causes of action are based.  *Id.* ¶¶ 8–38.
[35] *Id.* ¶¶ 8–9.
[36] *Id.* ¶¶ 10–19.
[37] *Id.* ¶¶ 20–25.
[38] *Id.* ¶¶ 26–38.
[39] *Id.* ¶¶ 26–38.
[40] *Id.* ¶¶ 20–21.
[41] Fraud Compl. ¶¶ 81–85.
[42] Compl. ¶¶ 32, 40, 74, 79; *see* ¶ 54.

relation to these statements.

The Complaint sets forth eleven causes of action. The first eight sound in constructive or actual fraudulent transfer or conveyance[43] under the New York Debtor and Creditor Law (the "DCL")[44] and the United States Bankruptcy Code, 11 U.S.C. § 548. The remaining causes of action are for unjust enrichment, money had and received, and disallowance of claims. Even accepting the factual allegations of the Complaint as true, the facts alleged in the Complaint do not state a claim as a matter of law.

## III. LEGAL STANDARD

### A. The Trustee's Pleading Requirements

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although a court must construe a complaint in a light most favorable to the plaintiff, a plaintiff still has an "obligation to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions," "a formulaic recitation of a cause of action's elements," or "naked assertion[s]" devoid of "further factual enhancement" to survive dismissal. *Twombly*, 550 U.S. at 545, 555, 557 citations and quotation marks omitted). Courts are not bound

---

[43] For purposes of clarity, "fraudulent transfer" in this memorandum of law refers to both "fraudulent transfer" and "fraudulent conveyance."

[44] On December 6, 2019, Governor Andrew Cuomo signed into law a new fraudulent transfer statute to replace the New York Fraudulent Conveyance Act (the "NYFCA"), which has been in place in New York since 1925. The new law, entitled the New York Voidable Transactions Act (the "NYVTA"), is intended to modernize the existing statute and bring New York law in line with federal law and the law in most other states. The NYVTA applies only to transactions on or after April 4, 2020. Therefore, the first eight transfers at issue in this action, pursuant to Exhibit A of Plaintiff's Complaint, all of which were made prior to April 4, 2020, are governed by the NYFCA (the "Former DCL") and all other transfers listed on Exhibit A of Plaintiff's Complaint, which occur after April 4, 2020, are governed by the NYVTA (the "Amended DCL"). The relevant provisions of the Former DCL and the Amended DCL are substantially similar, and legal analysis resultingly overlaps.

to accept as true a legal conclusion "couched as a factual allegation," *id.* at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation and quotation marks omitted).

New York courts routinely dismiss inadequately pled or implausible avoidance claims. *See, e.g.*, *Nanobeak*, 656 B.R. at 367 (dismissing fraudulent transfer claims that "relie[d] solely on an inapplicable presumption of all-encompassing fraudulent intent") (citation omitted); *Molina*, 657 B.R. at 187 (dismissing fraudulent transfer claims where "the Complaint alleges in a formulaic and conclusory manner that the Debtor received less than a reasonably equivalent value"); *In re Hydrogen, LLC*, 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing amended complaint proffering "a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made to Defendants"). On a motion to dismiss an avoidance claim, the court must measure what was exchanged "*in that [specific] transaction*" alleged to be fraudulent. *In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 679 (Bankr. S.D.N.Y. 2000) (emphasis in original), *aff'd sub nom.*, *Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001).

All allegations "grounded in fraud" are subject to the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *In re Kovacs*, 2021 WL 1603128, at *6 (Bankr. E.D.N.Y. Apr. 21, 2021); *see* Bankr. R. 7009. Rule 9(b) requires a plaintiff to "(1) detail the events giving rise to the fraud . . . and (2) allege facts 'that give rise to a strong inference of fraudulent intent.'" *Knopf*, 2016 WL 1166368, at *6 (citation omitted). If a "reasonable person"

would find "any opposing inference one could draw from the facts alleged" equally or more compelling, a complaint must be dismissed. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324 (2007). Rule 9(b) serves "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Tronox*, 429 B.R. at 92 (citation omitted).

## B.    Judicial Notice

In evaluating a motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and *matters of which a court may take judicial notice*." *Tellabs, Inc.*, 551 U.S. at 322 (emphasis added). The Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "Courts have . . . taken judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings," as well as "information . . . on a party's website." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462–63 (S.D.N.Y. 2020).

Courts "routinely take judicial notice of documents filed in other courts." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The court may take notice of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002). If "documents contradict Plaintiffs' allegations, the documents control and . . . [the court] need not accept as true the allegations in the amended complaint." *Rapaport v. Asia Elecs. Hldg. Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)

(granting motion to dismiss); *see Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (taking judicial notice, without converting motion to one for summary judgment, of plaintiff's affidavits and pleadings in a related state court action where the documents contradicted the factual allegations contained in the complaint); *Abdul-Rahman v. City of New York*, 2012 WL 1077762, at *3 (E.D.N.Y. Mar. 30, 2012) ("The plain purpose of th[is] exception is to prevent[ ] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.") (citation and quotation marks omitted) (alternations partly in original); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (taking judicial notice of plaintiff's prior admissions in prior action on a motion to dismiss).

## IV. ARGUMENT

It is plain on the face of the Complaint that the Trustee is on a fishing expedition commenced without reasonable investigation. The Trustee puts forth *twelve sentences* purportedly supporting its claims, *none of which* state any specific, non-conclusory factual matter related to the Challenged Transfers—they "set[ ] forth little more than a 'formulaic recitation of the elements.'" *Hydrogen*, 431 B.R. at 353 (citations omitted).[45] And allegations founded "upon information and belief" are made without any basis in fact. For example:

- The Complaint alleges: "The Transfers were made as part of Rosenthal's scheme. . . ."[46] But "reli[ance] solely on an inapplicable presumption of all-encompassing fraudulent intent" based on general wrongdoing by a debtor is insufficient to link such wrongdoing to *the particular transfers* the Trustee seeks to avoid. *Nanobeak*, 656 B.R. at 367 (citation omitted). Indeed, Barnett *sending*

---

[45] Compl. ¶¶ 26–38.
[46] *Id.* ¶ 29.

*payments to Dole* has nothing to do with the Trustee's allegations that Rosenthal's fraud scheme inflated Barnett's accounts receivable—the payments to Dole would have reduced, not increased them. *See id.* ("[F]raud and illegality in *obtaining* the funds does not support a finding that *spending* the funds was done with intent to hinder, delay, or defraud creditors.") (emphasis original); *see also Churchill*, 256 B.R. at 681 ("The fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render actually or constructively fraudulent a particular transaction which in and of itself is not fraudulent in any respect.").

- The Complaint alleges: "Barnett did not receive reasonably equivalent value in exchange for the" transfers.[47] This is a legal conclusion, and the Complaint does not allege any facts supporting an inference that Barnett did not receive value for the Challenged Transfers. Courts routinely dismiss constructive fraud claims where, like here, there is a complete absence of facts that the debtor did not receive reasonably equivalent value. *See, e.g.*, *In re Garvia*, 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) ("[T]he Complaint must be dismissed because it fails to plead any facts concerning the value of [the payments] as compared to the consideration received in exchange for them. Instead, Plaintiff merely states in conclusory fashion that [it] did not receive reasonably equivalent value.").

- The Complaint alleges: "Upon information and belief, at all relevant times, Defendant and Rosenthal, who arranged for the Transfers, had a close and long-standing relationship."[48] But the Trustee has pled no facts establishing such "relationship," and baseless allegations made "[u]pon information and belief" do not suffice. *In re Vivaro*

---

[47] *Id.* ¶ 40; *see id.* ¶¶ 54, 74, 79.
[48] *Id.* ¶ 30.

*Corp.*, 524 B.R. at 547; *see, e.g.*, *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309–10 (S.D.N.Y. 2005) (dismissing actual fraudulent transfer claims because the sole allegations implicating defendants were conclusory and "[o]n information and belief"); *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, 1996 WL 732634, at *5 (S.D.N.Y. 1996) (dismissing complaint with conclusory and unsupported allegations based upon "information and belief"). Dole dealt at arm's length with the Debtor and its affiliates—and the Trustee does not allege (nor could it) any specific facts to the contrary.

- The Complaint alleges: "Barnett's books and records do not appear to contain purchase orders or invoices or other documentation to indicate a proper basis for the Transfers."[49] But the Complaint alleges that Barnett's books and records were inaccurate and "fictitious,"[50] and the Fraud Complaint alleges that "the Barnett Entities' books and records are a sham."[51] Thus, pointing to Barnett's books and records says nothing at all about the propriety of the Challenged Transfers. Instead, these contradictory statements render the Complaint's allegations implausible. *See Rapaport*, 88 F. Supp. 2d at 184.

- The Complaint alleges: "The Transfers were not made in good faith."[52] This is conclusory too. The Complaint provides no specifics at all as to Barnett's lack of good faith in making each of the Challenged Transfers.

At bottom, the Complaint amounts to "no more than an effort to bolster an implausible theory with rank speculation." *See Fabrikant*, 394 B.R. at 739 (dismissing claims where on the

---

[49] *Id.* ¶ 36.
[50] *Id.* ¶¶ 20–21.
[51] Fraud Compl. ¶¶ 81–85.
[52] Compl. ¶ 32.

face of the complaint, it was "implausible" to suggest that every transaction in a series of transactions was made in furtherance of the "scheme alleged in the . . . Complaint"). The Trustee theorizes that because these transfers took place at the same time Barnett engaged in fraud, they must have exacerbated the fraud and are thus avoidable. But the "fatal legal flaw in this postulate, as a matter of fraudulent conveyance analysis, is that it focuses not on a comparison of the values of the mutual consideration actually exchanged in the transaction . . . but on the value, or more accurately stated, the supposed significance or consequence of the [payments] in the context of [Barnett's] whole [fraud] scheme." *Churchill*, 256 B.R. at 680–81 ("The fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render actually or constructively fraudulent a particular transaction which in and of itself is not fraudulent in any respect.").

This matter is analogous to *In re Nanobeak Biotech Inc.*, in which the bankruptcy court dismissed constructive and actual fraudulent conveyance claims arising under the Bankruptcy Code and DCL. 656 B.R. at 370. Nanobeak's CEO was "found guilty of conspiracy and fraud" for "us[ing] the Debtor as his own personal piggy bank," including by "caus[ing] the Debtor to pay various rental [and other] . . . payments for several properties." *Id.* at 357. The trustee sought to avoid these payments, alleging constructive and actual fraudulent transfer in a complaint that "extensively detail[ed] [the CEO]'s fraud and the resulting criminal and civil litigation" but failed to allege sufficient factual matter surrounding the particular transfers at issue. *Id.* at 358, 364–68. The court found that the constructive fraud allegations lacked sufficient detail—"other than in the recitation of the elements of the charge"—and were "conclusory, and therefore insufficient." *Id.* at 364–65. And dismissing the actual fraud claims, the court explained that allegations of "illegal activity, standing alone, do[ ] not support a presumption that payments . . . are made with an actual

intent to hinder, delay or defraud the creditors of the business." *Id.* at 366. Here, as in *Nanobeak*, the Trustee may not "rel[y] solely on an inapplicable presumption of all-encompassing fraudulent intent, pleading facts that only go to the way [the debtor] was operated, to the detriment of its own lenders and investors." *Id.* at 367 (quotation marks and emphasis omitted) (alterations partly in original).

On this standalone basis, the Complaint should be dismissed in its entirety for failing to satisfy the Trustee's pleading requirements, the basis of which is further detailed below in Section A (constructive fraud), Section B (actual fraud), and Section C (unjust enrichment and money had and received).

## A.  Counts Two–Five and Eight Alleging Constructive Fraudulent Transfer Should Be Dismissed

A transfer is not constructively fraudulent merely because the debtor was insolvent at the time or as a result of the transfer. To state a claim for constructive fraudulent transfer, the Trustee must also allege that the Challenged Transfers occurred without fair consideration or reasonably equivalent value.[53] Former DCL §§ 272–275; Amended DCL § 274; 11 U.S.C. § 548(a)(1)(B). Under the DCL, "fair consideration" requires both a "fair equivalent" and that "the transferee" made "the exchange in good faith." *Nanobeak*, 656 B.R. at 363 (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 53–54 (2d Cir. 2005)). Though, "[a]t the motion to dismiss stage," the Trustee need only allege lack of fair consideration or the absence of good faith, the Trustee does neither. *Id.*

---

[53] It is well-established that "'fair consideration' under the [ ] DCL and 'reasonably equivalent value' under the Bankruptcy Code Section[ ] 548(a)(1)(B) . . . have the same fundamental meaning . . . [and] are interpreted similarly by the courts." *In re USA United Fleet, Inc.*, 559 B.R. 41, 60 (Bankr. E.D.N.Y. 2016) (citation omitted) (alterations partly in original); *see also Churchill*, 256 B.R. at 677 (collecting cases). "[C]ourts have used the Code's 'reasonably equivalent value' interchangeably with the [DCL's] 'fair consideration' for purposes of analyzing constructive fraud claims under the Bankruptcy Code and the [Debtor and Creditor Law]." *Durand v. Ackerman*, 2010 WL 3834587, at *6 (E.D.N.Y. Sept. 27, 2010) (citation omitted). The only practical difference between Section 548's "reasonably equivalent value" and the DCL's "fair consideration" is that "fair consideration" requires a showing of both "fair equivalency of the consideration" and "good faith." *In re 45 John Lofts, LLC*, 599 B.R. 730, 741 (Bankr. S.D.N.Y. 2019).

The Trustee fails to allege that Barnett did not receive reasonably equivalent value, nor does it adequately allege a lack of good faith.

1. **The Trustee Did Not Adequately Allege That Barnett Did Not Receive Reasonably Equivalent Value or Fair Consideration for the Challenged Transfers**

Although there are no allegations that goods were not provided in exchange for payment, the Trustee purports to allege that these payments should be avoided because "Barnett did not receive reasonably equivalent value."[54] The constructive fraud statutes under the Bankruptcy Code and New York law[55] require the Trustee to prove that Barnett did not receive "reasonably equivalent value" for the transfer. The burden is on the Trustee to adequately allege the absence of such value. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

On a motion to dismiss, "conclusory allegations" that the transferor "received nothing of reasonably equivalent value" "do not suffice" to sustain a cause of action.[56] *DoubleLine Corp. LP v. Odebrecht Fin. Ltd.*, 323 F. Supp. 3d 393, 466 (S.D.N.Y. 2018) (dismissing constructive fraudulent transfer claim under Former DCL § 273); *Molina*, 657 B.R. at 187 (dismissing complaint that conclusorily stated, "Debtor received less than reasonably equivalent value for the Transfers" and "Debtor received no consideration for these [T]ransfers," because vague allegations of "no consideration" were too "conclusory") (alternations in original); *see Hydrogen*, 431 B.R. at 353 (dismissing constructive fraud claim due to "a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange" for the transfers). Here, the Trustee's allegations are conclusory and fail to plausibly allege the absence

---

[54] Compl. ¶ 40.
[55] A transfer is constructively fraudulent under the Former DCL if it occurred without adequate consideration or value exchanged for the transfer. Former DCL §§ 273–275. Under the Bankruptcy Code and Amended DCL, a Trustee must show that the debtor received less than a "reasonably equivalent value in exchange for" the transfer. 11 U.S.C. § 548(a)(1)(B); Amended DCL § 274. A Trustee must also allege the debtor's insolvency at the time of or resulting from the transfer. 11 U.S.C. § 548(a)(1)(B); Former DCL §§ 273–275; Amended DCL § 274.
[56] *See supra* Section III.A.

of reasonably equivalent value.

*First*, the Trustee does not allege that goods were not exchanged for payment.  In fact, Dole sold rolls of paper, a resource Barnett and its affiliates routinely purchase and process to make cardboard boxes.[57]  "Courts have [ ] tended to recognize an element of reasonableness as inherent in the meaning of fair equivalent value" under the Bankruptcy Code and New York law.  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 449 (S.D.N.Y. 2014) (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995); *Churchill*, 256 B.R. at 678)).  Where actual "goods or services" were purchased from a transferee, "none of the chapters of the Bankruptcy Code authorize the trustee to review the reasonableness of a debtor's pre-petition expenditures or seek recovery of expenditures deemed not 'reasonably necessary.'"  *See, e.g.*, *In re Michel*, 572 B.R. 463, 474–75 (Bankr. E.D.N.Y. 2017) (citation omitted) (finding that debtors received "reasonably equivalent value and fair consideration" for payments that "satisf[ied] their legal obligation" and rejecting trustee's theory in opposition, which "would arguably support (and could conceivably require) a trustee bringing an action against any vendor or service provider from whom or which a debtor purchased discretionary, as opposed to necessary, goods or services in the months or years preceding a bankruptcy case") (alternations in original).  Because there are no allegations of a "disparity between [each of the payments] and the value of [Dole]'s services[,] [e]quity, and the law, would be ill-served by granting relief on th[is] complaint[.]"  *Churchill*, 256 B.R. at 682 (dismissing fraudulent transfer claims).

*Second*, the Trustee fails to explain how Barnett did not receive reasonably equivalent value in light of the allegations in the Fraud Complaint.  There, the Trustee admits that Barnett did "legitimate business"[58] but also alleges that Barnett sent and received "significant" and "large"

---

[57] *See supra* pp. 4–5; Fraud Compl. ¶¶ 53–54.
[58] *Id.* ¶ 338.

sums of money as part of the fraud, including to and from actual customers and vendors of Barnett.[59]  Here, the Trustee alleges no facts in the Complaint around the "legitimate business" conducted with Barnett—that is, the Trustee never alleges any specifics to show how the Challenged Transfers were outside of the "legitimate business" that they allege occurred by and among the Barnett entities.  The Trustee must do more to sustain its claims.  *See United States v. Silver*, 864 F.3d 102, 115 (2d Cir. 2017) ("Because money is fungible, once funds obtained from illegal activity are combined with funds from lawful activity in a single account, the 'dirty' and 'clean' funds cannot be distinguished from each other."); *Towers Charter & Marine Corp. v. Cadillac Ins. Co*., 894 F.2d 516, 523 (2d Cir. 1990) ("[M]oney is the quintessential fungible.").

*Third*, even if Barnett did not somehow receive a direct benefit, the Trustee fails to allege any facts to show that Barnett did not receive an "indirect benefit."  *Rubin v. Manufacturers Hanover Tr. Co.*, 661 F.2d 979, 992 (2d Cir. 1981).  The Second Circuit has consistently held that a transferee is immune from constructive fraud claims if the debtor receives an indirect benefit from a transaction that otherwise confers "fair consideration" upon a third party.  *See Rubin*, 661 F.2d at 991–92 (2d Cir. 1981) ("[T]he transaction's benefit to the debtor need not be direct; it may come indirectly through benefit to a third person.") (citation and quotation marks omitted); *see also HBE Leasing Corp.*, 48 F.3d at 630 (holding that a debtor need only receive a "benefit from the entire transaction," which may involve "consideration initially go[ing] to third parties."); *In re Akanmu*, 502 B.R. 124, 131 (Bankr. E.D.N.Y. 2013) (collecting cases).

Indirect value need not be a "penny for penny exchange."  *In re Gonzalez*, 342 B.R. 165, 173 (Bankr. S.D.N.Y. 2006).  So long as there is relative parity between the transfer to the third party and the indirect benefit to debtor, a court will find "fair consideration."  *See id.*; *Rubin*, 661

---

[59] *Id.* ¶¶ 254, 263, 305–06, 338, 342–43, 380, 382–83.

F.2d at 991–92. Such parity need not be quantifiable. *See In re Old CarCo LLC*, 2011 WL 5865193, at *12 (S.D.N.Y. Nov. 22, 2011), aff'd sub nom., 509 Fed. App'x 77 (2d Cir. 2013) ("[T]he fact that the exact value cannot be quantified at this stage does not prevent a finding that the allegation that the [certain consideration] has no net value or little value is implausible."); *HBE Leasing Corp.*, 48 F.3d at 639 (finding debtor received value despite not receiving economic equivalent, because "joint services represented 'fair consideration' . . . regardless of [who] paid the bill").

The Complaint does not even consider, much less allege to be false, the various ways Barnett plausibly received an indirect benefit from its payments to Dole. For example, the Trustee alleges that Barnett conducted "legitimate business" at all relevant times,[60] such that its payments to Dole could have constituted the "repayment of loans made to a corporation, where the corporation had served merely as a conduit for transferring the loan proceeds," or "a novation, where the debtor's discharge of a third person's debt also discharges his own debt to that third person." *Rubin*, 661 F.2d at 992; *Sharp*, 403 F.3d at 53–55 (explaining that New York courts consider "payment . . . on account of an antecedent debt . . . made to an outsider" to be fair consideration).

In addition, Barnett shared a common owner with a "spider-web of entities."[61] In the Fraud Complaint, the Trustee alleges that Barnett made payments on some or all of these entities' behalf at the common owner's behest and for his benefit,[62] causing third-parties to view or transact with these entities as one and the same with Barnett[63]—consistent with documents widely available to

---

[60] *Id.* ¶ 338; *see supra* Section II.B.
[61] *See* Fraud Compl. ¶ 4; *see supra* Section II.B.
[62] *See, e.g.*, Fraud Compl. ¶¶ 2–12, 102, 112, 242–49, 351.
[63] *See supra* Section II.B.; *see, e.g.*, Fraud Compl. ¶¶ 2–12, 102, 112, 242–49, 351.

the public.[64]  The Fraud Complaint also details a lack of corporate formalities and controls between

Barnett on the one hand and a litany of entities on the other,[65] and the Trustee failed to allege any

reason that Barnett would not have received a benefit by virtue of a benefit received by any of

those entities.  *See McNellis v. Raymond*, 420 F.2d 51, 53 (2d Cir. 1970) (affirming decision

finding fair consideration because "there is substantial evidence which establishes an identity of

interest between" two affiliated parties); *see also* 5 COLLIER ON BANKRUPTCY ¶ 548.03 ("[I]f

affiliated entities are functionally identical such that bestowing value to one equates to giving value

to the other, courts have held that funds [provided] to one will be equivalent value for a payment

made or security interest given by the other, effecting a form of consolidation or alter ego

analysis.").

      The Trustee cannot seize upon a lack of corporate formalities as to Barnett and other

entities on the one hand in the Fraud Complaint, but then, without more and to Dole's detriment,

rely on contradictory allegations as to corporate formalities in the Complaint to claim lack of

benefit from the Challenged Transfers.  *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F.

Supp. 2d 308, 321 (E.D.N.Y. 2010) ("Although New York courts are careful to respect the

corporate form, individuals nonetheless may not abuse the privilege of incorporation to shield

themselves from the consequences of wronging others."); *see Citibank, N.A. v. Aralpa Hldgs. Ltd.

P'ship*, 714 F. Supp. 3d 416, 439 (S.D.N.Y. 2024) ("[C]ourt[s] may properly disregard the

corporate form 'whenever necessary to prevent fraud or to achieve equity.'") (citation omitted).

    **2.**    **There Are No Allegations That Dole Lacked Good Faith in Receiving the Challenged Transfers**

      A showing of "fair consideration" under the DCL requires not only a "fair equivalent" but

---

[64] *See supra* Section II.B.
[65] *See id.*

also that "the transferee" made "the exchange in good faith." *Nanobeak*, 656 B.R. at 363 (internal quotation marks omitted) (quoting *Sharp*, 403 F.3d at 53–54). The Trustee has not adequately alleged the absence of either. "[L]ack of good faith" may be shown in the absence of "an honest belief in the propriety of the activities in question," "no intent to take unconscionable advantage of others," and "no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Id.* (citation omitted).

The Trustee only vaguely alleges that "[t]he Transfers were not made in good faith."[66] This allegation surrounds Barnett's good faith when it "made" the transfers, not Dole's good faith in receiving them. The Trustee makes *no allegations whatsoever* about Dole's good faith in receiving the payments. Barnett does not allege any facts indicating Dole's lack of good faith because no such facts exist.

* * *

The Trustee fails to allege any factual matter making it plausible that Barnett did not receive reasonably equivalent value or that Dole lacked good faith. Given the "complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made to Defendant[ ]," the court should dismiss the Trustee's constructive fraudulent transfer claims. *Hydrogen*, 431 B.R. at 353 (dismissing constructive fraud claims arising under 548(a)(1)(B) and the Former DCL); *Sharp*, 403 F.3d at 53–56.

**B.      Counts One, Six, and Seven for Actual Fraudulent Transfer Should Be Dismissed**

**1.      The Trustee Failed to Allege Barnett's Actual Fraudulent Intent**

To establish claims for actual fraudulent transfer, the Trustee must plead facts demonstrating Barnett's "actual intent" to "hinder, delay, or defraud" its creditors in making the

---

[66] Compl.¶ 32.

challenged payments to Dole. 11 U.S.C. § 548(a)(1)(A); Former DCL § 276; Amended DCL § 273(a). The "burden is on the party seeking to set aside the conveyance"—the Trustee—to "ple[a]d with specificity under Rule 9(b)" the debtor's "actual intent to hinder, delay, or defraud" creditors. *In re Adler*, 372 B.R. 572, 581 (Bankr. E.D.N.Y. 2007). To meet this burden, a plaintiff may "rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Sharp*, 403 F.3d at 56 (citation omitted). The "lack of specific allegations . . . implicating the defendant in *intentional* wrongdoing against creditors, would be fatal to a claim of intentional fraudulent conveyance." *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (emphasis added); *see Molina*, 657 B.R. at 191 (dismissing actual fraudulent transfer claims where "the Complaint includes threadbare allegations that track the language of the statute"). So too here.

The Trustee alleges that because Barnett was engaged in fraud generally—and despite admissions of legitimate business occurring at the same time[67]—every transaction by Barnett for *years* must have been fraudulent. However, the Trustee may not "rel[y] solely on an inapplicable presumption of all-encompassing fraudulent intent, pleading facts that only go to the way [the debtor] was operated, to the detriment of its own lenders and investors," without alleging *how* the Challenged Transfers were ruled out as legitimate. *Nanobeak*, 656 B.R. at 367 (emphasis and citation omitted) (alterations partly in original); *see also Molina*, 657 B.R. at 191–93. And even if Barnett committed "fraud and illegality in *obtaining* the funds" it transferred (an allegation that does not exist as to each of the Challenged Transfers in the Complaint), this "does not support a finding that *spending* the funds was done" with the necessary intent. *Nanobeak*, 656 B.R. at 367 (emphasis in original). Nor do allegations that a debtor made an aggregate amount or series of

---

[67] *See supra* Section II.B.

cash or other transfers over a period of time, without further particularization, sufficiently state an intentional fraudulent transfer claim. *Fabrikant*, 394 B.R. at 733 (collecting cases).

The Trustee does not allege any facts directly or indirectly supporting an inference that Barnett had actual fraudulent intent when it made the Challenged Transfers to Dole. The Complaint alleges that Barnett was involved in widespread fraud,[68] and that "[t]he Transfers were made as part of Rosenthal's scheme."[69] But allegations of "illegal activity, standing alone, do[ ] not support a presumption that payments . . . are made with an actual intent to hinder, delay or defraud the creditors of the business." *Nanobeak*, 656 B.R. at 366 (citation omitted). Any other purported badges of fraud in the Complaint are implausible or unparticularized to the Challenged Transfers.[70]

The facts and circumstances surrounding these transfers make plain that they were not fraudulent. The Trustee alleges that the underlying scheme caused lenders to rely upon inflated financials and provide funds to Barnett,[71] and that the Challenged Transfers "were made as part of Rosenthal's scheme."[72] But the allegations as to Dole are not plausible. Barnett sent money to Dole, which the Trustee does not allege Dole sent back to Barnett—this would have reduced, not inflated, Barnett's financial position during any diligence by creditors.

## 2. Dole Received the Transfers in Good Faith

Dole's good faith is also considered in defense to claims of actual fraud. 11 U.S.C. § 548(c); Former DCL § 278(1); Amended DCL § 277(a). A Trustee may not avoid a transfer to a transferee "that takes for value [to] . . . retain any interest transferred . . . to the extent the

---

[68] Compl. ¶¶ 20–25.
[69] *Id.* ¶ 29.
[70] *See supra* pp. 12–15.
[71] Fraud Compl. ¶¶ 1–2, 10.
[72] Compl. ¶ 29.

transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. 548(c); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 178 (2d Cir. 2021) (Under § 548(c), "a transferee may retain transfers [provided] it took 'for value' and 'in good faith.'").

A "reasonable person" would not have investigated further upon the facts at bar.[73] *See In re M. Fabrikant & Sons,* Inc., 447 B.R. 170, 193 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 Fed. App'x 55 (2d Cir. 2013). Barnett held itself out as related to the invoiced entities.[74] Barnett was also publicly known to enter into contracts for the advance and repayment of funds to these and similar entities.[75] The Trustee has alleged that Barnett routinely engaged in this course of activity, such that it would have appeared to any outsider to be in the ordinary course of Barnett's business.[76] The Trustee does not—because it cannot—allege that Dole should have somehow understood payment by Barnett (an actual or perceived affiliate of a Dole customer) to be potential evidence of an alleged kiting scheme spanning six years and involving dozens of conspiratorial entities.[77] *See Fabrikant*, 447 B.R. at 193 (dismissing avoidance claims where complaint "does not allege that any Lending Bank should have known that a particular advance would be 'siphoned' off and fraudulently transferred to a Fortgang Affiliate").

The good faith defense "protect[s] innocent creditors or purchasers for value who have

---

[73] *See supra* Sections II.B., IV.A.2. And even if the Trustee had alleged Dole was aware that "'some form of [ ] dishonesty'" surrounded the transfer—which it did not—this would not amount to "subjective bad faith." *Sharp*, 403 F.3d at 55 (quoting and adopting *Boston Tr. Gr., Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987)) (declining to find lack of good faith where the plaintiff alleged that the transferee "knew that the funds used to repay [it] were fraudulently obtained").

[74] *See supra* Section II.B.

[75] *See id.*

[76] *See, e.g.*, Fraud Compl. ¶¶ 98–115 (describing in detail the "endless loop" of fictitious payments Barnett allegedly engineered to deceive creditors and lenders).

[77] *See generally* Fraud Compl.

received the debtor's property without awareness of any fraudulent scheme." *HBE Leasing Corp.*, 48 F.3d at 636. As here, where the Trustee has drawn a line between Dole and the entities it alleges to have been involved in the alleged fraud,[78] there is no plausible basis for the Trustee's actual fraud claims.

## C. Counts Nine and Ten Alleging Unjust Enrichment and Money Had and Received Should Be Dismissed

Under New York law, courts have characterized the unjust enrichment and money had and received causes of action as being "essentially identical." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 319 (S.D.N.Y. 2021) (citations and quotation marks omitted); *see Gargano v. Morey*, 165 A.D.3d 889, 891 (2d Dep't 2018) ("A cause of action for money had and received is similar to a cause of action to recover damages for unjust enrichment, the essence of which is that one party has received money or a benefit at the expense of another."). For both claims, the burden is on the Trustee to allege that (1) Dole received Barnett's money at Barnett's expense and (2) that "equity and good conscience" do not permit Dole to retain the payments. *Id.* (laying out the parallel elements of each claim).

The Trustee must also allege these claims with particularity. "[W]hen an unjust enrichment claim sounds in fraud, it must satisfy th[e] heightened pleading standard of Rule 9(b)." *Kalaj v. Kay*, 2023 WL 4564795, at *12 (E.D.N.Y. July 17, 2023), appeal dismissed (Oct. 18, 2023) (citations and quotation marks omitted) (dismissing conclusory unjust enrichment claims sounding in fraud). Because they "sound[ ] in fraud," claims for unjust enrichment and money had and received are subject to Rule 9(b)'s heightened pleading standard. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023); *accord Bauser v. Porsche Cars North Am., Inc.*, 2024 WL 2406884, at *12 (N.D. Ga. 2024) (applying New York law to apply Rule 9(b) to unjust

---

[78] *See supra* p. 6; *see generally* Fraud Compl.

enrichment and money had and received claims). The Trustee's allegations—that Defendant "unfairly benefited" and "received and benefited from" the transfers, and "as a matter of equity and good conscience" "should not be allowed to retain the Transfers"—are conclusory and fail to state a claim.[79]

As for the first element, "[t]here are no allegations that [Dole] retained money for no consideration," so the Trustee "failed to state causes of action against [Dole] sounding in money had and received [or] unjust enrichment." *Gargano*, 165 A.D.3d at 891–92. And even if the Trustee did sufficiently allege that Dole retained money "at the Debtor's expense" (it does not), the Complaint still fails to meet the second element: it "does not adequately explain factually how 'equity and good conscience militate against' allowing Defendant[ ] to retain such payments." *Hydrogen*, 431 B.R. at 359; s*ee also Paper Acquis., Inc. v. Astoria Fed. Sav. & Loan Ass'n*, 2014 WL 2890339, at *5 (Sup. Ct. N.Y. Cnty. June 26, 2014) ("bare legal conclusions that defendant was enriched at plaintiff's expense by its receipt of [funds] and that 'equity and good conscience dictate that Defendant should make restitution'" are insufficient where "there are no allegations or evidence offered to show how defendant was unconscionably enriched in this instance."). Recovery "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc*., 18 N.Y.3d 790 (2012). Recovery is not available here.

The alleged passive receipt of funds at the direction of another is not enough. *See Fountoukis v. Geringer*, 33 A.D.3d 756, 757 (2d Dep't 2006); *Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp*., 14 A.D.3d 678, 680 (2d Dep't 2005) (holding that the "allegation that

---

[79] *See* Compl. ¶¶ 84, 85, 89.

the appellants received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment"). And the Trustee does not allege (nor could it) that Dole "received the transfers through some mistake[,] deception," "oppression, imposition, extortion, or deceit. . . ." *Goel v. Ramachandran*, 111 A.D.3d 783, 792 (2d Dep't 2013); *Panix Promotions, Ltd. v. Lewis*, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (citation omitted). Rather, the payments were received for paper sold. Because the Trustee alleges no wrongful conduct by Dole, it cannot demonstrate the receipt of an unjust benefit and these claims fail on the pleadings.

**D.    Count Eleven Seeking Disallowance of Claims under 11 U.S.C. §§ 502(d) and (j) Should Be Dismissed**

Section 502 of the Bankruptcy Code permits a court to "disallow," at the behest of a trustee, certain claims made on the estate by creditors. 11 U.S.C. § 502(d); *In re Try The World, Inc.*, 2021 WL 3502607, at *11 (Bankr. S.D.N.Y. Aug. 9, 2021). The Trustee requests that "any and all claims of Defendant against the Debtors' estates" be "disallowed until such time as Defendant pays Plaintiff the amount equal to the Transfers."[80]

Dole has made no claims against Barnett's estate, and the Complaint does not allege that any such claims exist. Dole is thus an inappropriate defendant to Section 502 claims. *See In re Maxwell Comm'n Corp. PLC*, 186 B.R. 807, 824 (S.D.N.Y. 1995) ("[T]here are no 'claims' to disallow under § 502(d), and the appellants are therefore not entitled to the relief they seek.") (dismissing complaint); *see also Try The World*, 2021 WL 3502607, at *11 ("As an initial matter, any recoveries asserted by the Trustee under this Claim for Relief are purely nascent, as [defendant] has not filed a proof of claim in this case, and so there is no 'claim' to disallow under section 502(d)."); *In re A.N. Freida Diamonds, Inc.*, 616 B.R. 295, 321 (Bankr. S.D.N.Y. 2020) ("[T]he formal disallowance of a claim under section 502(d) is proper only where a judgment has

---

[80] *Id.* ¶¶ 94–95.

been entered that confirms the claimant's obligation to deliver property to the estate, and only after the claimant fails to do so.").

This allegation evidences the lack of investigation or specificity in the Complaint—this claim may be applicable to other defendants named using the Trustee's cookie-cutter complaint, but not Dole. As it is plainly inapplicable to the facts at bar, "the Court must dismiss the disallowance cause[ ] of action." *45 John Lofts*, 599 B.R. at 750 (dismissing disallowance counts where plaintiff did not file the required proof of claim).

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss the Trustee's Complaint with prejudice.

Dated: May 12, 2025
New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel I. Katzin*
Rachel I. Katzin

GIBSON, DUNN & CRUTCHER LLP
Thomas A. Manakides (*pro hac vice* pending)
Irvine, CA 92612-4412
Telephone: (949) 451-4060
tmanakides@gibsondunn.com

Rachel I. Katzin
200 Park Avenue
New York, NY  10166-0193
Telephone:  (332) 253-7660
rkatzin@gibsondunn.com

*Attorneys for Defendant*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

BARNETT CORPORATION, et al.

              Debtors.

-----------------------------------------------------------x

ALLAN B. MENDELSOHN, Solely In His
Capacity as Chapter 7 Trustee Of The Estates
Of Barnett Corp. and Barnett Forest LLC,

              Plaintiff,

 -against-


DOLE FRESH FRUIT COMPANY,

              Defendant.

-----------------------------------------------------------x

Bankruptcy Case No. 8-22-73623-ast

Adversary Proceeding No. 8-24-08121-ast

### [PROPOSED] ORDER GRANTING DEFENDANT'S
### MOTION TO DISMISS THE COMPLAINT

WHEREAS, on December 13, 2024, the Plaintiff in this proceeding, Allan B. Mendelsohn, Solely In His Capacity As Chapter 7 Trustee Of The Estates Of Barnett Corp. and Barnett Forest LLC, filed a Complaint (the "Complaint") (ECF No. 1).

WHEREAS on May 12, 2025, Defendant Dole Fresh Fruit Company ("Defendant") filed a Motion to Dismiss the Complaint (ECF No. __) (the "Motion to Dismiss").

WHEREAS on June __, 2025, Plaintiff filed an Opposition to Defendant's Motion to Dismiss.

WHEREAS on June __, 2025, Defendant filed a brief in Reply to Plaintiff's Opposition.

WHEREAS on _____, 2025, the Court held a hearing on Defendant's Motion to Dismiss.

WHEREAS on _____, 2025, the Court issued its decision granting Defendant's Motion to Dismiss.

NOW, THEREFORE, IT IS HEREBY ORDERED, that:

1. The Defendant's Motion to Dismiss the Complaint is GRANTED.

2. The Complaint is hereby DISMISSED with prejudice.

Dated: _____, 2025
    New York, New York

_____
THE HONORABLE ALAN S. TRUST
CHIEF UNITED STATES BANKRUPTCY JUDGE